v. Waveform Technologies, Inc. Let me ask you about this Rosenblatt prior art reference, because on the face of Rosenblatt at 1033, it talks about this being unsatisfactory in this particular environment, in this electrochemical process. And there seems to be a dispute as to whether that environment that was involved in Rosenblatt is similar to the environment that we're dealing with here, and there seems to be somewhat conflicting testimony as to whether the two environments are the same. And I don't see in the board decision that it really addresses that question of whether the two environments are comparable. It just says that Rosenblatt teaches it's unsatisfactory. Is that a problem, that we don't have a specific finding on the environment's question, as it were? I don't think so, Your Honor. First, the appellant, Dexcom, never once during the IPR proceeding raised the argument that conditions in the body are milder than the Rosenblatt conditions. They didn't make that argument. Waveform made some arguments, but Dexcom's ability to argue that point by virtue of the fact it didn't make it is waived. Second, as you pointed out in his deposition testimony, Dexcom's expert, Dr. Vachon, directly contradicted Dexcom's position. Your pleading said the opposite. You know, we've got differing positions on this, surprisingly, from the parties. Where you said that the environments are different, they said the environments are the same. Well, Your Honor, I think you correctly summarized the sequence of events here. Below, there were arguments about non-analogous prior art that were not adopted by the board. Dexcom was opposing those arguments concerning non-analogous prior art. Perhaps as a result, Dexcom never once argued that the conditions in the body are milder. In fact, the only evidence Dexcom put in the record on this point was when Dr. Vachon was questioned in deposition, and he denied that the conditions in the body are milder. Okay, let me ask you another question here, and that relates to the board's refusal to consider these prior art references, including Carter, because they weren't properly raised in the petition. And we have Genzyme, and we have Ariosa, and it seems to me that there's an argument that the board's ruling here in dismissing the relevance or ability to consider those in reply is contrary to those cases. Your Honor, so to be clear about Waveform's position, it's not the position stated by Dexcom's counsel. We think it's clear and literal in the board's ruling that it found that the combination of Rosenblatt and Wilson did not teach the in-contact with limitation. That is, neither reference taught it, either separately or together, they don't teach it. You're not talking about the same thing I'm talking about. I'm next getting to it. So Genzyme... The board said the APA precludes us from considering Carter and these other references because they weren't properly raised in the petition. It's not sufficient that they were raised in the reply. That on its face seems questionable in the light of Genzyme and Ariosa. Yes, Your Honor. So there is a decision here. Was Dexcom trying to change its prima facie case? Was it using these references to supply a missing element in the claims, which we believe was missing, the in-contact element was missing from both Wilson and Rosenblatt. So the law is clear that Dexcom cannot, in a reply, make changes to the prior art exciting in order to fill that gap in its prima facie case. We believe that's the case. Those cases say that you can, you can't use them to fill a gap, but you can use them to inform what the knowledge of someone skilled in the art was at the time, and to interpret the Rosenblatt disclosure. Yes, Your Honor. What you can't do, though, is take a Carter or a Beer or a Haley and use that to interpret Rosenblatt in a way that completely changes what Rosenblatt teaches. In other words, Rosenblatt teaches that an alloy layer is essential to holding these two elements together. What they would do with this state-of-the-art argument is use one of these references and say, no, Rosenblatt doesn't teach you you have to have an alloy. They eliminate that requirement from Rosenblatt. So you can't use Genzyme or the other case under a state-of-the-art theory to dramatically alter what the prior art teaches. In those cases, in Ariosa, the reference to the generalized prior art appeared in the petition, correct?  It wasn't raised for the first time in the library. That's correct. And they were a record. That's not correct. Those cases do involve things that were raised for the first time in the reply, and they specifically hold that it's appropriate. Again, Your Honor, I think that the decision point here is are these references being used to fill a gap? Is it not correct that those cases involve things that were raised for the first time in the reply, and the argument was that they were not properly raised at that point because it was too late? I think that's right, Your Honor. But when it's used... Those references were being used to bring in background art. That's right. And that was clear from when they were presented initially, right? Right. And so the argument in Ariosa and the other cases, well, you can't exclude that. It's not being offered to fill a hole in the prima facie case. That's correct. So if you look at how this art was being offered, it's at pages 118 through 120 in the record, which was in the petition for review. It sets up Carter, for example, and goes down the list. It looked to me like that was not being offered for background art, but was being offered in part of the 103 analysis. Yes, absolutely. I mean, isn't that, on the decision tree, the question we have to decide? Because if this art was being offered by way of background, there seems to be strong precedent that it can't be excluded just because it was only brought up on reply. And yes. And if it's offered by way of background, it can't be used to alter or change or rewrite Rosenblatt's teaching, which is that an alloy layer is necessary. What Dexcom said when it came in reply... That's an argument you would make if we decided that it was there to exclude it and it's got to go back for background art. And you're going to say background art is here, and filling gaps in 103 analysis over here, you can do the former and not do the latter. That would be your argument. But isn't the question for us whether or not pages 118 through 121, 22 that cites Beer, Haley, Carter, for what purpose was it being offered? In the reply. In the reply? OK. In the reply, we believe that these were being offered to fill a gap in the prima facie case. But they didn't say that, right? They said that they offered these references in the event there's any difficulty in Rosenblatt's teaching of the in contact with limitation. And if there's any difficulty in Rosenblatt teaching platinum in direct contact with tantalum. Are you able to identify the pages where in the reply where this was argued? Yes, your honor. APPX 633. 633. OK. So it's 633. Oh, Haley, Carter, OK. Dexcom says to the extent there were any difficulties applying platinum to tantalum in 1950, the petition proved how these complexities were solved over the next 53 years. And so. What page is that? I'm sorry. That is APPX 633. 633. And it begins to the extent. So they seem to be saying that these references tell you how the prior art was understood at the time, the relevant time here. All those references post-date Rosenblatt, right? They all post-date Rosenblatt. So it's not how Rosenblatt would have been understood at the time, but what happened after Rosenblatt. That's true, your honor. And I believe the best way to read this is that in its reply, Dexcom was anticipating based on the patent owner response that it had difficulty with Rosenblatt. Dexcom didn't mention the problem about the alloy layer in its petitions. When we filed our patent owner response, we made the problem with the alloy layer very evident. Now Dexcom's coming back in reply and saying, well, if Rosenblatt is deficient, we have these other references. What they're saying is if Rosenblatt said this was unsatisfactory in the years intervening after Rosenblatt, it was found to be satisfactory. That's basically what they're saying, right? Yes, and in so saying, they are attempting to change the fundamental teaching in Rosenblatt and thereby offer a new prior art reference to meet its prima facie case. Well, I guess that's the question as to whether this is a new reference to meet the prima facie case or it's just a new reference to explain what someone skilled in the art would have understood later. I mean, it's not a clear line. Is that a fact question or a legal question? Because the board in its decision exactly said that's the question and they said we view this to be offered not as background but for a prima facie case. My understanding, Your Honor, is that that is a fact question that would be reviewed for substantial evidence. Okay, anything else? Your Honor, do you have other issues that were raised by Dexcom that you'd like me to address? I guess not. Okay, thank you. Mr. McDaniels has got two minutes. Thank you, Your Honor. First of all, Judge Dyke, with regard to Rosenblatt, it wasn't an attempt to change Rosenblatt's meaning at all. Teaching away, which was what we were addressing here, has to be evaluated as of the time of the invention, not as of the time of the prior art reference. That was one of the fundamental errors that we assigned in this case with regard to understanding the board's decision as a teaching away decision. Yes, perhaps in 1950 Rosenblatt might have thought that in a caustic environment this would have been inappropriate, but by the time of all of the prior art references that were cited, both four of which were cited in our petition, so they can't claim lack of notice. They were all being done for background, for purpose, just as in Genzyme, just as in Ariosa. Why didn't you rely on any of those prior art references to fill the gaps that existed to the extent Rosenblatt would have been viewed as teaching away? Well, I think once the petition was granted on Rosenblatt, we reasonably, of course, proceeded with that combination. Why didn't you include other combinations in the petition? I can't subjectively go back into the minds of the lawyers at that time, but I can only assume, based on the clarity of Rosenblatt, that the fact that Rosenblatt is going so far as to say platinum coated on tantalum is so old that we're going to distinguish it away and tell you why it doesn't work in these caustic environments. But in any event, we know that Genzyme and Ariosa allow us to do what we did here, and that is to provide background. And we were explaining how Rosenblatt would be understood to a person of ordinary skill in the art as of 2003. Finally, Judge O'Malley... It was a question of whether or not you're providing background or filling a gap, a fact question or a legal question? I think ultimately it's a legal question, Judge Clevenger, but even if it were treated as a fact question, we wouldn't have to shrink from it here, because if you look at exactly the page that my friend read to you from page 633, I think, from the appendix, you don't see us trying to fill a gap. And it would be silly if we were trying to fill a gap there because we were relying on most of the same references that we'd already put in our petition in the first place. So we never viewed it as a gap that needed to be filled in the first place. If I could conclude very quickly, Judge O'Malley, with regard to our colloquy during my opening argument about waiver, I'd like to just point you to the board's decision at page 13 of the appendix. The board certainly didn't view us as having waived our opportunity to respond on this issue. They actually say that we assert that the patent donor's construction for in contact with does not preclude an intervening layer. And that is where the board then addresses McCour. If I could just conclude on one thought...  Okay, thank you, Your Honor. And it's thankful, counsel, that the case is removed.